```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------- x
LINDA RYLOTT-ROONEY,                    :
                                        :
              Plaintiff,                :     07 Civ. 11091 (JSR)
                                        :
       -v-                              :     MEMORANDUM
                                        :
ALITALIA-LINEE AEREE ITALIANE-SOCIETA   :
PER AZIONI,                             :
                                        :
              Defendant.                :
--------------------------------------- x
```

JED S. RAKOFF, U.S.D.J.

     Plaintiff Linda Rylott-Rooney brings this discrimination action against defendant Alitalia – Linee Aeree Italiane – Societa Per Azioni ("Alitalia") under the human rights laws of the State and City of New York, specifically, the New York State Human Rights Law, N.Y. Exec. L. § 296(1)(a) ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107(1)(a) ("NYCHRL").  Her Complaint alleges that Alitalia, her former employer, wrongfully terminated her because of her age and her national origin and citizenship.[1]  On February 7, 2008, Alitalia moved to dismiss the Complaint on the ground that, because Rylott-Rooney is a resident of, and worked primarily from, Minnesota, the New York human rights laws do not apply.  Following briefing and oral argument, the Court, in an Order dated March 7, 2008, denied Alitalia's motion.  This Memorandum sets forth the reasons for that ruling.

---

[1] Three other counts of the Complaint were dismissed on consent of the parties.  See Order, Mar. 7, 2008.

1

According to the Complaint, whose allegations must be accepted for purposes of this motion, Rylott-Rooney began working for Alitalia in 1981 and eventually became the Manager of National and Corporate Accounts for Alitalia - North America. Compl. ¶¶ 9-10. During the time period relevant to this action, Rylott-Rooney was a resident of Minnesota and worked out of defendant's Minneapolis office. Id. ¶¶ 6, 11. She reported to Alitalia's New York City office by phone and, occasionally, in person. Id. ¶ 11. On December 8, 2004, when Rylott-Rooney was 53 years old, she went to the New York office to attend a work-related meeting. Id. ¶ 17. Following the meeting, Rylott-Rooney was asked to meet with Marco D'Ilario, Senior Director of Sales for the United States and Mexico and Rylott-Rooney's supervisor, and Francesco Gallo, Senior Vice President of Corporate Affairs. Id. ¶¶ 15, 17-18. D'Ilario and Gallo informed Rylott-Rooney that she was being terminated, and that there were no other available positions she could fill. Id. ¶¶ 18-19. According to Rylott-Rooney, the decision to terminate her resulted from Alitalia's informal policy, which originated with its Chief Executive Officer, of terminating employees over 50 years of age and replacing them with younger Italian workers. Compl. ¶¶ 13, 15. Both parties agree that the decision to terminate Rylott-Rooney, whatever its cause, was made in New York and conveyed to plaintiff while she was in New York.

When a non-resident seeks to invoke the coverage of the New York City and State human rights laws, he or she must show that the

alleged discrimination occurred within New York City and New York State respectively.  See Shah v. Wilco Systems, 806 N.Y.S.2d 553, 558 (1st Dep't 2005) (City); Iwankow v. Mobil Corp., 541 N.Y.S.2d 428, 429 (1st Dep't 1989) (State); see also N.Y. Exec. Law. § 290(3) (stating that purpose of NYSHRL is to eliminate discrimination "within this state"); N.Y.C. Admin. Code § 8-101 (announcing policy of eliminating discrimination "[i]n the city of New York").  Rylott-Rooney contends that both the fact that the decision to terminate her was made in New York and the fact that the termination actually occurred in New York establish a sufficient nexus with the City and State.  Alitalia disagrees, arguing that the only relevant location is the one where, in Alitalia's view, Rylott-Rooney experienced the impact of the termination, i.e., her primary workplace in Minnesota.

Alitalia relies primarily on Shah v. Wilco Systems, 806 N.Y.S.2d 553.  In Shah, the plaintiff, a New Jersey citizen employed by a New-York-City-based employer but assigned to a long-term project in New Jersey, was terminated while she was in New Jersey.  Id. at 555, 558.  After finding that the plaintiff had not alleged that the decision to terminate her was made in New York City, the court nonetheless went on to say, in a sentence on which Alitalia has placed particular emphasis, that "[i]n any event, the locus of the decision to terminate her is of no moment."  Id. at 558.  Given the court's prior conclusion that the decision did not occur in New York, however, the statement is dictum, and Alitalia has directed the Court to no other binding New York decisions on this question.  Indeed, in

3

an earlier case, the First Department gave a strong indication that if a discriminatory termination decision were made in New York, that fact might be sufficient to confer jurisdiction under the NYSHRL.  In Iwankow v. Mobil Corp., 541 N.Y.S.2d 428 (1st Dep't 1989), the only "jurisdictional nexus" the plaintiff asserted was that his termination "was part of a world-wide reduction in force which was decided upon at corporate headquarters in New York"; he did not, the court emphasized, "allege that the decision to implement this reduction in an age-discriminatory manner originated at corporate headquarters."  Id. at 428.  In concluding that New York court had no subject matter jurisdiction over the alleged wrong, id., the court implicitly suggested that the result might have been different had the plaintiff in fact alleged that the decision to implement the policy in a discriminatory fashion had been made in New York.

     A number of federal courts, however, appear to have concluded, in line with the dictum in Shah, that the fact that a decision to terminate is made in New York does not establish that the City and State human rights laws cover an individual's claim.  See, e.g., Lucas v. Pathfinder's Pers., Inc., Nos. 01 Civ. 2252, 02 Civ. 1743, 2002 U.S. Dist. LEXIS 8529, at *3 (S.D.N.Y. May 13, 2002) ('The allegation that the decision to terminate Plaintiff was made in New York City . . . is insufficient to establish a violation of the NYCHRL where, as here, the impact of that decision occurred outside of New York City."); Wahlstrom v. Metro-North Commuter R.R., 89 F. Supp. 2d 506, 527 (S.D.N.Y. 2000) (stating that courts in the

4

S.D.N.Y. "have held that the NYCHRL only applies where the actual impact of the discriminatory conduct or decision is felt within the five boroughs, even if a discriminatory decision is made by an employer's New York City office"); Duffy v. Drake Beam Morin, No. 96 Civ. 5606, 1998 U.S. Dist. LEXIS 7215, at *35 (S.D.N.Y. May 19, 1998) ("[E]ven if, as [plaintiffs] claim, the decision to fire them was made by DBM at its headquarters in New York City, that fact, standing alone, is insufficient to establish a violation of the City Human Rights Law when the employees affected by that decision did not work in New York City.").

Fortunately, the question of whether the fact that a termination decision is made is New York is sufficient to invoke coverage of the New York human rights laws is not a question this Court must answer, because, in this case, what occurred in New York was not just the decision to terminate but also the actual act of termination. Shah, it must be noted, says nothing – either in the sentence flagged by Alitalia or elsewhere in the opinion - about whether this important added factor makes a difference or, indeed, is itself sufficient to confer jurisdiction. Rather, in Shah, plaintiff both worked in New Jersey and was informed of her termination in New Jersey. As a result, although the court opined that New Jersey was the significant location for purposes of NYCHRL coverage because it was "where the impact [wa]s felt," it had no need to specify which of those two factors generated the "impact." Nor has the Court found

5

any other New York or federal case specifically directed to this distinction.

A number of federal district court cases do suggest that the fact that a termination actually occurs in New York City may be sufficient to apply the City and State human rights laws. See, e.g., Tebbenhoff v. Elec. Data Sys. Corp., No. 02 Civ. 2932, 2005 U.S. Dist. LEXIS 29874, at *15 (S.D.N.Y. Nov. 29, 2005) (finding that the NYSHRL's and NYCHRL's jurisdictional requirements were met because, among other reasons, "a discriminatory act was committed within New York City when [a defendant] called and terminated plaintiff from defendants' New York City offices"), aff'd on other grounds, No. 06 Civ. 2745, 2007 U.S. App. LEXIS 14632 (2d Cir. June 19, 2007); Launer v. Buena Vista Winery, Inc., 916 F. Supp. 204, 207, 214 (E.D.N.Y. 1996) (citing the fact that the plaintiff's firing "occurred in New York" as one reason why the NYCHRL and NYSHRL applied to his claim); see also Salvatore v. KLM Royal Dutch Airlines, No. 98 Civ. 2450, 1999 U.S. Dist. LEXIS 15551 (S.D.N.Y. Sept. 30, 1999) (distinguishing Launer on the ground that the plaintiffs before the court alleged ongoing harassment, some isolated incidents of which occurred in New York, while in Launer, the plaintiff alleged an adverse employment action – termination – that occurred in New York); Casper v. Lew Lieberbaum & Co., No. 97 Civ. 3016, 1998 U.S. Dist. LEXIS 4063, at *16-17 (S.D.N.Y. Mar. 31, 1998) (distinguishing Launer on the ground that the plaintiff before the court received outside New York City discriminatory remarks that originated within it, while in Launer the

6

plaintiff received discriminatory remarks in New York City and was terminated in New York City).

However, given the dearth of controlling New York authority on the subject, the Court finds it appropriate to look to an analogous field of law: New York's long-arm jurisdiction over tortfeasors. See generally United States v. Burke, 504 U.S. 229, 246 (1992) (noting that numerous cases have "recognized parallels . . . between tort claims and claims under antidiscrimination statutes"). Section 302 of the New York Civil Practice Law and Rules ("CPLR") provides that New York courts may exercise personal jurisdiction over a non-domiciliary if that non-domiciliary, among other things, "commits a tortious act within the state," § 302(a)(2), or "commits a tortious act without the state causing injury to person or property within the state," § 302(a)(3). For jurisdiction to exist under section 302(a)(2), the defendant must be physically present in the state when he commits the tortious act. See CPLR § 302 Practice Commentaries, C302:10. Where the tortious act occurs outside New York but the injury is felt within it, section 302(a)(3) provides jurisdiction instead. To invoke that section, a plaintiff must show that the "situs of injury," defined as "the location of the original event that caused the injury," is within the state. Hermann v. Sharon Hosp., Inc., 522 N.Y.S.2d 581, 583 (2d Dep't 1987). "This 'original event' is, however, generally distinguished not only from the initial tort but from the final economic injury and the felt consequences of the tort." Bank Brussels Lambert v. Fiddler Gonzalez

7

& Rodriguez, 171 F.3d 779, 791 (2d Cir. 1999).[2]  In other words, a tort may involve three distinct locations: the site of the original tort (which, if it is New York, supports jurisdiction under section 302(a)(2)); the site of the "original event" causing injury (which, if it is New York, supports jurisdiction under section 302(a)(3)); and the site where the plaintiff ultimately feels consequences (which, if it is New York, is insufficient to support jurisdiction).

In applying this statutory framework to a wrongful termination claim, the Second Circuit has concluded that the execution of a decision to terminate an employee – felt at the place where that decision is communicated – is the "initial tort," while the experience of being removed from a job - felt at the employee's workplace - is the "original event" causing injury.  In DiStefano v. Carozzi North America, Inc., 286 F.3d 81 (2d Cir. 2001) (per curiam), the plaintiff, who was a New York resident and performed his work duties exclusively from his home in Staten Island, was terminated by his employer, a Delaware corporation with its principal place of business in Rhode Island, while he was at a meeting in New Jersey. Id. at 83.  The district court had ruled that it lacked personal jurisdiction over the defendant under CPLR section 302(a)(2) because "the tortious act of termination" occurred in New York and under section 302(a)(3) because the "original event that caused plaintiff's

---

[2]  For example, if a defective product is manufactured in Kansas and explodes in Connecticut where it injures a New York resident, and the victim returns to New York and continues to suffer health problems, the "situs of injury" is Connecticut. See Practice Commentaries C302:11.

8

injury could be construed as either the plaintiff's termination (which occurred in New Jersey)" or underlying bias leading to that termination, which the plaintiff had not alleged was connected to any particular location. DiStefano v. Carozzi N. Am., Inc., No. 98 Civ. 7137, 2000 U.S. Dist. LEXIS 21548, at *9-10 (E.D.N.Y. Jan. 24, 2000). The Court of Appeals agreed with the district court's analysis of section 302(a)(2), because "[t]he execution of the decision to terminate DiStefano . . . constitute[d] the 'tortious act without the state' contemplated by the statute."  But it reversed on the section 302(a)(3) ground, finding that the "original event" relevant to section 302(a)(3) was the plaintiff's "experience of being removed from his job." 286 F.3d at 85. This latter was "a New York event that constitute[d] 'the first effect of the tort' of discharging the employee." Id.

DiStefano demonstrates that when an employee is terminated in a location other than his workplace, the act of termination is the original tortious act (such that, if it occurs in New York, section 302(a)(2) confers jurisdiction) and the experience of being removed from employment is the original event causing the injury (such that, if the workplace is in New York, section 302(a)(3) confers jurisdiction). So long as one or the other of those two events occurs in New York, New York courts can exercise long-arm jurisdiction over the defendant.

The Court sees no reason why a similar analytic framework should not govern anti-discrimination protection under the NYCHRL and

9

NYSHRL, such that those laws apply _either_ when the intial discriminatory act (for example, a termination) occurs in New York _or_ when the original experience of injury, which occurs at the employee's workplace, is in New York.  Indeed, the plain language of the City and State human rights laws supports this reading.  Under each statute, it is an unlawful practice for an employer "to discharge from employment" an individual because of, _inter alia_, his age or national origin.  N.Y. Exec. L. § 296(1)(a); N.Y.C. Admin. Code § 8-107(1)(a).  Common sense suggests that if an employer discharges an employee while both the employer and employee are in New York, the unlawful practice has occurred _in_ New York.  _See also_ N.Y.C. Admin. Code § 8-130 (directing "liberal[]" construction of the City HRL).

Here, it is undisputed that the act of termination occurred in New York.  That alone is sufficient to establish discrimination "within" New York, even if, as Alitalia argues, Rylott-Rooney felt the effects of this termination at her workplace in Minnesota.

Accordingly, defendant's motion to dismiss the remaining counts of the complaint is denied.  Counsel are reminded that the scheduling order put in place on February 6, 2008, remains in effect.

_____
JED S. RAKOFF, U.S.D.J.

Dated: New York, New York
       April 14, 2008