UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LINDA RYLOTT-ROONEY,

        Plaintiff,

-against-

ALITALIA–LINEE AEREE ITALIANE SpA,

        Defendant.

---

Case No. 07-CV-11091 (JSR)

## STATEMENT OF UNCONTESTED MATERIAL FACTS IN SUPPORT OF DEFENDANT ALITALIA'S MOTION FOR SUMMARY JUDGMENT

Defendant Alitalia–Linee Aeree Italiane SpA, by its attorneys, Vedder Price P.C., submits this Statement of Uncontested Material Facts, pursuant to Rule 56.1 of the Local Civil Rules of the United States District Court for the Southern District of New York, in support of its motion for summary judgment dismissing the Amended Complaint filed by Linda Rylott-Rooney in the above-captioned action.

This Statement of Uncontested Material Facts contains citations to the record in which support for such facts is found. Copies of those portions of the record which are referenced herein are annexed as exhibits to the accompanying Declaration of Alan M. Koral, Esq. ("Koral Declaration").

**Parties**

1.    Defendant Alitalia–Linee Aeree Italiane SpA ("Defendant" or "Alitalia") is an airline with its global headquarters in Rome, Italy. Alitalia's principal North America office is in New York (Amended Complaint ("Am. Cplt."), attached as Exhibit A to the Notice of Motion herein, ¶2).

2. Plaintiff Linda Rylott-Rooney ("Plaintiff" or "Rylott-Rooney") was an employee of Alitalia from January 1982 (Deposition of Linda Rylott-Rooney, hereinafter "Pl. Dep.," 175-76 ) until December 8, 2004 (Am. Cplt. ¶¶17-18) (All referenced pages of Plaintiff's deposition are collected in minuscript form at Exhibit A to Koral Declaration).

3. Plaintiff is a United States citizen (Am. Cplt. ¶6). Plaintiff's date of birth is May 8, 1951, and at the time of her termination, she was 53 years old (Pl. Dep. 21).

4. In 2005, Plaintiff filed a charge with the United States Equal Employment Opportunity Commission ("EEOC") alleging discrimination on the basis of her age and her status as a non-Italian (Pl. Dep. 149-51). After an investigation, the EEOC notified Plaintiff by letter dated July 14, 2005 of its decision to dismiss her charge and of her right to sue Alitalia under federal law (EEOC Letter, attached as Exhibit B to Koral Affidavit).

**Plaintiff's Job Responsibilities**

5. From 1991 to the spring of 2003, Plaintiff was employed as the Sales Manager of Alitalia's Minneapolis District Office. In that capacity, prior to 2001, Plaintiff had input into the hiring decisions affecting the Minneapolis office. (Pl. Dep. 69-70)

6. Prior to 2001, in her capacity as Sales Manager of Alitalia's Minneapolis Office, Plaintiff was responsible for a geographic area encompassing eight states and directly supervised sales representatives in Minneapolis, Kansas City and Denver. The Kansas City and Denver offices were closed by Alitalia by 2001, leaving only sales representatives in the Minneapolis office under Plaintiff's supervision. (Pl. Dep. 80-81)

7.      From 2001 to December 8, 2004, Plaintiff was also given responsibilities as Manager, National and Corporate Accounts for Alitalia (Am. Cplt. 11; Pl. Dep. 69-70). In this position, Plaintiff was the direct supervisor of corporate sales representatives in Alitalia's various offices (Pl. Dep. 75, 185). In that capacity, she "increased [her accounts'] sales from $5 million to $10 million" in the first six months of 2004 (Pl. Dep. 141-42, 87).

8.      In 2003 and 2004, Plaintiff reported to Lucia Alla ("Alla"), Manager of the Corporate Unit, in Plaintiff's capacity as Manager, National and Corporate Accounts, as well as to a regional sales manager in Chicago with respect to Plaintiff's district sales responsibilities, each of whom in turn reported to Marco D'Ilario, then Senior Director of Sales for North America ("D'Ilario") (Pl. Dep. 81; Deposition of Marco D'Ilario, hereinafter "D'Ilario Dep.," 19) (All referenced pages of D'Ilario's deposition are collected at Exhibit C to Koral Declaration).

9.      D'Ilario had occasion to observe Plaintiff's work performance, and described Plaintiff as "a very good employee" (D'Ilario Dep. 19-20).

**Other Employees**

10.     During this time, Alitalia also employed Ken Futterman ("Futterman") as Sales Manager of the Miami District Office; Kathy Moriarity ("Moriarity") as Sales Manager of the Chicago District Office; and Lucianna White ("White") as Sales Manager of the Boston District Office, all of whom reported to D'Ilario in New York (Pl. Dep. 74, 142-43; D'Ilario Dep. 29).

11.     In 2004, Alitalia opened an office in Washington, D.C. in connection with a new flight connecting that city with Milan (Pl. Dep. 213-14). At or around the time of Plaintiff's termination, Nicholas DiBari ("DiBari") was promoted from the position of Sales Representative

in Alitalia's Boston office to that of Sales Manager of the new Washington, D.C. District Office (Pl. Dep. 153-54).

### Plaintiff's Continued Employment Despite Closure of the Minneapolis Office

12. From 2001 to 2004, along with the rest of the airline industry, Alitalia was experiencing significant economic pressures due in part to the impact of the events of September 11, 2001, and was the verge of bankruptcy (D'Ilario Dep. 28; Deposition of Francesco Gallo, hereinafter "Gallo Dep.," 19-20, 53-56) (All referenced pages of Gallo's deposition are collected at Exhibit D to Koral Declaration). Alitalia's corporate headquarters in Rome responded by, *inter alia*, strongly encouraging its North America operations to reduce costs, overhead and personnel (Gallo Dep. 55-56; D'Ilario Dep. 28).

13. By 2002, as part of a nationwide restructuring in response to this pressure from corporate headquarters in Rome, Alitalia North America had begun to close its "offline offices," meaning offices located in cities to which Alitalia did not fly (Pl. Dep. 136-37). By 2001, Alitalia had closed its offline offices in Kansas and Colorado (Pl. Dep. 80), and between 2002 and 2003, Alitalia closed its offline offices in Houston, Los Angeles, San Francisco (Pl. Dep. 136-37). By the spring of 2003, Plaintiff was the sole Alitalia employee remaining in the Minneapolis office, and in August 2003 Alitalia's Minneapolis office was closed (Pl. Dep. 70).

14. After closure of the Minneapolis office, Plaintiff continued to work from her home office in suburban Minneapolis. During this time, she made trips to New York and reported to the New York office by telephone. (Am. Cplt. ¶11; Gallo Dep. 42; March 13 Deposition of Francesco Gallo in the matter captioned *Lorusso v. Alitalia-Linee Aeree Italiana,*

-4-

*SpA*, Index No. 07 CV 03583 (LBS), hereinafter "3/13 Gallo Dep.," 160) (All referenced pages of the 3/13 Gallo Dep. are collected in minuscript form at Exhibit E to Koral Declaration)

15. In late 2003, after the closure of the Minneapolis office, Plaintiff was offered a promotion to the position of the Manager of Alitalia's Corporate Unit, which would have entailed a relocation to New York. Plaintiff declined this offer because she liked the job she had and did not want to commute to New York. Alitalia then offered the position to its second choice, Lucia Alla, a woman several years younger than Plaintiff, who accepted the position and consequently became Plaintiff's supervisor. (Pl. Dep. 112, 144-45; D'Ilario Dep. 44, 47-48, 49-50)

### Elimination of Plaintiff's Position

16. In late 2004, Alitalia reorganized its sales structure. Prior to 2004, Alitalia had organized sales management in North America on the basis of geographic area. Rather than allocate sales management responsibilities by geographic region, Alitalia decided to allocate responsibilities according to "channel," or area of responsibility, and thereby eliminate a layer of management. Under this model, for example, one sales unit would focus on tour operations, another would focus on dot-com sales, and another would focus on corporate travel. As part of this reorganization, sales efforts in North America were centralized in New York. (D'Ilario Dep. 25-26, 58)

17. The decision to consolidate sales efforts in New York was made by Pierandrea Galli, Head of Worldwide Sales, based in Rome ("Galli"), Giulio Libutti, Vice President of Sales for North America ("Libutti"), and D'Ilario (Gallo Dep. 90-91; D'Ilario Dep. 14, 18, 27-28). Alla assumed the job responsibilities that Plaintiff had held as Manager, National and Corporate

Accounts, and Alitalia corporate sales representatives who had been reporting to Plaintiff began reporting directly to Alla in New York. D'Ilario and Alla assumed those remaining responsibilities that Plaintiff had as Regional Sales Manager. (D'Ilario Dep. 44; 3/13 Gallo Dep. 160-61)

18. This reorganization resulted in the elimination of the district sales managers in Chicago, Miami, Boston and Minneapolis. Consequently, Alitalia terminated the employment of Moriarity, Futterman and Plaintiff, all of whom had been employed as district sales managers (D'Ilario Dep. 28-29; Gallo Dep. 92-94). Another district sales manager, Luciana White, was eligible to participate in Alitalia's Early Retirement Program and elected to do so, whereupon her position was eliminated as well (Gallo Dep. 93, 95-96; Pl. Dep. 74).

19. Galli first informed Francesco Gallo, then Senior Vice President of Corporate Affairs in North America ("Gallo") of the decision to eliminate these positions at a meeting in New York in 2004 (Gallo Dep. 91-92). Gallo expressed no suspicion at that time that the decision was related to age (Gallo Dep. 94). After the passage of "three, four [or] five months," Libutti again reminded Gallo of the need to inform Plaintiff that her position would be eliminated (Gallo Dep. 98). Gallo testified that Libutti, D'Ilario and Galli rejected his attempts to participate in the decision-making process regarding the elimination of Plaintiff's position (Gallo Dep. 97-99). Libutti, D'Ilario and Galli instructed Gallo to inform Plantiff that her position was eliminated due to "the economic conditions of Alitalia" (Gallo Dep. 79).

20. On December 8, 2004, Gallo informed Plaintiff that her position was eliminated due to the financial pressures that Alitalia was facing. Marco D'Ilario attended the meeting in

-7-

which Plaintiff was informed of her termination. (Am. Cplt. ¶¶17-18; Pl. Dep. 191-92; Gallo Dep. 79; D'Ilario Dep. 46-47)

21. Gallo's employment with Alitalia ended in May 2006 (Gallo Dep. 7). He has since brought his own suit against Alitalia, Galli and Libutti in an action captioned *Gallo v. Alitalia Linee Aeree, SpA, Galli and Libutti*, Index No. 07-CV-06418 (Gallo Dep. 24).

### The Early Retirement Plan

22. In 2002, 2003 and 2004, in an effort to reduce personnel and cut costs, Alitalia introduced a series of voluntary incentive programs to employees who were 55 years of age or older. The 2004 program offered enhanced retirement packages to employees over that age who had at least 15 years of service and who chose to participate in the program. (2004 Alitalia USA Voluntary Early Retirement Plan, attached as Exhibit B to Koral Declaration)

23. Plaintiff was 53 years old and consequently ineligible for the early retirement plan at the time of the elimination of her position (Pl. Dep. 21; Gallo Dep. 40, 51, 97).

24. There was no policy requiring severance packages for employees who were terminated. Instead, severance packages were determined on a case-by-case basis. (Gallo Dep. 36)

### Plaintiff's Allegations

25. Plaintiff claims that she was discriminated against because Alitalia chose to retain employees in positions similar to hers at or around the time of her termination (Pl. Dep. 183). Plaintiff alleges that the following employees received more favorable treatment than her: DiBari

(Pl. Dep. 153-55); James Prano ("Prano") (Pl. Dep. 183); Elizabeth Santella ("Santella") (Pl. Dep. 186-88); and Ester Lorusso ("Lorusso") (Pl. Dep. 186-87).

26. DiBari was in his forties at the time of his promotion to the position of Sales Manager in Washington, D.C. (Pl. Dep. 155-56). Plaintiff evinced no interest in working in Washington, D.C., and does not allege that Alitalia should have offered her the position to which DiBari was promoted (Pl. Dep. 155).

27. At the time of Plaintiff's termination, Prano was the Alitalia liaison with Discover the World, an Arizona-based outside company that handled Alitalia's offline sales (Pl. Dep. 70-72). Prano was in his late forties, and Plaintiff admits that his job was not comparable to hers (Pl. Dep. 183-84).

28. Lorusso is approximately five years younger than Plaintiff and, at the time of Plaintiff's termination, had recently been promoted from the position of Director of Marketing to that of Managing Director of Alitalia's subsidiary, GA 2000 in New York (Pl. Dep. 109-10, 112; Gallo Dep. 113).

29. Santella was in or near her fifties and based in New York at the time of Plaintiff's termination (Pl. Dep. 122-23, 186-87).

30. Plaintiff's Amended Complaint alleges that she "asked Mr. D'Ilario and Mr. Gallo if there were any other positions available that she could fill and Plaintiff was told that there were none" (Am. Cplt. ¶19). Neither Gallo, Dilario nor Plaintiff herself remembers her making this request (Gallo Dep. 50; D'Ilario Dep. 47; Pl. Dep. 214).

31. There were no management positions available in Alitalia in the United States at the time that Plaintiff was terminated (D'Ilario Dep. 47-48, 49-50).

32. Plaintiff alleges that she was qualified for the position ultimately filled by John DiRienzo, a man in his forties, but admits that the job was unavailable at the time that her position was eliminated (Pl. Dep. 228-29).

### Lack of Citizenship Discrimination

33. During the time that she exercised authority over personnel decisions in the Minneapolis office, Plaintiff was never instructed to base a hiring decision upon an applicant's citizenship (Pl. Dep. 66).

34. Plaintiff does not recall ever hearing Libutti, Alitalia's head of North America operations, say anything about the citizenship of any Alitalia employees (Pl. Dep. 96, 176).

35. D'Ilario never said anything to Plaintiff that she regarded as discriminatory on the basis of citizenship (Pl. Dep. 102-04).

36. D'Ilario is aware of no Alitalia preference in employment or personnel decisions for people of Italian national origin (D'Ilario Dep. 42).

37. Gallo is aware of no employment decisions Alitalia made from 2002 to 2006 that were based upon citizenship (Gallo Dep. 27).

### Lack of Age Discrimination

38. D'Ilario never said anything to Plaintiff that she regarded as discriminatory on the basis of age (Pl. Dep. 102-04).

39. At his deposition in this case, Gallo expressed his opinion that Plaintiff was terminated because of her age (Gallo Dep. 40).

40. At his deposition in this case, Gallo expressed his opinion that Plaintiff was terminated in violation of United States Equal Employment laws (Gallo Dep. 48).

41. Gallo based this opinion upon a meeting he attended in 2003 in which Francesco Mengozzi ("Mengozzi"), then-the Chief Executive Officer of Alitalia, allegedly stated that Alitalia needed to rejuvenate itself, and that Alitalia should get rid of people over the age of fifty (Gallo Dep. 15-16, 28-29, 103). Nobody repeated or supported this alleged directive (Gallo Dep. 103), and Mengozzi left Alitalia prior to the time that Plaintiff was terminated (Gallo Dep. 57-58).

42. Gallo testified that, on "more than one occasion," Galli expressed a desire to hire individuals who were in their thirties (Gallo Dep. 31-32).

43. When Libutti told Gallo to eliminate Plaintiff's job in 2004, Gallo was under the impression that it was pursuant to the alleged policy articulated by Mengozzi a year earlier (Gallo Dep. 100). However, Gallo has no recollection of Libutti mentioning age in relation to the decision to terminate Plaintiff's employment (Gallo Dep. 100).

44. Galli did not mention age when he instructed Gallo to terminate Plaintiff, Moriarity, Futterman and White (Gallo Dep. 93-94).

45. D'Ilario did not mention age when he instructed Gallo to terminate Plaintiff (Gallo Dep. 98-100), nor did D'Ilario inquire into the ages of incumbents when identifying positions for elimination (D'Ilario Dep. 53).

NEWYORK/#199204.1

46.     Plaintiff testified that, in late 2003 or early 2004, she suggested that Alitalia hire Marie Nappi ("Nappi"), a woman who had formerly worked for the company, for an available position in Boston. She testified that, in response, she was told that Nappi was too old. Plaintiff did not report this comment to anyone within Alitalia and does not recall who made this alleged comment. (Pl. Dep. 73-74, 75-76, 209-10)

47.     Plaintiff is aware of nobody at Alitalia who was terminated as a result of Mengozzi's comments. (Pl. Dep. 208)

Dated: New York, New York
       August 26, 2008

                                          VEDDER PRICE P.C.

                                          By: s/ Alan M. Koral
                                               Alan M. Koral (AK-1503)
                                               Michael J. Goettig (MG 2771)
                                               1633 Broadway, 47th Floor
                                               New York, New York  10019
                                               (212) 407-7700

                                               *Attorneys for Defendant*
                                               *Alitalia–Linee Aeree Italiane SpA*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LINDA RYLOTT-ROONEY,<br><br>  Plaintiff,<br><br>-against-<br><br>ALITALIA–LINEE AEREE ITALIANE SpA,<br><br>  Defendant. | Case No. 07-CV-11091 (JSR)<br><br>**CERTIFICATE OF SERVICE** |

    I, Michael Goettig, hereby declare, pursuant to 28 U.S.C. 1746, under penalty of perjury, that on August 26, 2008, I caused a copy of the **STATEMENT OF UNCONTESTED MATERIAL FACTS IN SUPPORT OF DEFENDANT ALITALIA'S MOTION FOR SUMMARY JUDGMENT** to be served upon Plaintiff by electronically filing same, thereby ensuring that Plaintiff's attorney, Fausto E. Zapata, Jr., Esq. of The Law Offices of Fausto E. Zapata, Jr., P.C., received same because he is a registered e-filer and registered to receive e-notices in this case.

DATED: August 26, 2008          s/ Michael J. Goettig
                                                        Michael J. Goettig

NEWYORK/#199204.1